UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES INVESTOR PROTECTION        :
CORPORATION,                          :
                                      :
        Plaintiff,                    :
                                      :        12 MC 115 (JSR)
        -v-                           :
                                      :        OPINION AND ORDER
BERNARD L. MADOFF INVESTMENT          :
SECURITIES LLC,                       :
                                      :
        Defendant.                    :
------------------------------------x
In re:                                :
                                      :
MADOFF SECURITIES                     :
------------------------------------x
PERTAINS TO:                          :
                                      :
Consolidated proceedings on           :
standing and SLUSA issues             :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

        In the complaints underlying the instant consolidated

proceeding, Irving H. Picard (the "Trustee"), the trustee appointed

under the Securities Investor Protection Act ("SIPA"), 15 U.S.C.

§§ 78aaa et seq., to administer the estate of Bernard L. Madoff

Investment Securities LLC ("Madoff Securities"), has asserted common

law claims, such as aiding and abetting fraud and unjust enrichment,

against various "feeder fund" defendants described below. These

defendants now seek to dismiss the Trustee's suits against them,

arguing that the Trustee has no standing to bring these actions.

        The Court assumes familiarity with the underlying facts of

Madoff Securities' fraud and ensuing bankruptcy, and recounts here

1

only those facts that are relevant to the instant issues. The defendants here seeking dismissal of the Trustee's complaints include principals and affiliates of the so-called "feeder funds," investment funds that pooled their customers' assets for investment with Madoff Securities. In essence, the Trustee alleges that these individuals and entities knew of Madoff Securities' fraud but looked the other way because they received substantial fees and other payments from Madoff Securities. The Trustee alleges that their actions (or inaction) allowed Madoff Securities' Ponzi scheme to continue and grow, thereby causing harm to those Madoff Securities' customers who were duped by the scheme. Based on these allegations, the Trustee seeks to recover from these third-party defendants such monies as he believes are owed to Madoff Securities' customers for distribution as part of the Madoff Securities liquidation.

Defendants have moved to dismiss the Trustee's complaints in their respective adversary proceedings, arguing that (1) the Trustee lacks standing to assert these common law claims, and (2) that, if the Trustee has standing to pursue these claims, the claims are precluded nonetheless by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb. Defendants previously moved to withdraw the reference to the Bankruptcy Court, and the Court granted that motion with respect to these two issues on a consolidated basis. Order at 4-5, No. 12 Misc. 115, ECF No. 114 (S.D.N.Y. Aug. 22, 2012). The Court also withdrew the reference on the issue of whether the "insider exception" to New York's doctrine

2

of in pari delicto applies to the Trustee's claims brought against
Deborah Madoff and Stephanie Mack, the wives of Madoff's two sons.
See id. at 5. The Court received briefing on each of these issues
from defendants, the Trustee, and the Securities Investor Protection
Corporation ("SIPC"), and heard oral argument on October 15, 2012.
This Opinion and Order addresses the relevant issues in turn and
directs further proceedings upon return to the Bankruptcy Court.

        As an initial matter, the Trustee previously raised in similar
actions many of the arguments he advances in the instant proceeding.
In Picard v. HSBC Bank PLC, 454 B.R. 25 (S.D.N.Y. 2011), this Court
rejected those arguments and found that the Trustee lacked standing
to assert common law claims against HSBC Bank and other third-party
defendants, but the Trustee nonetheless reasserted these arguments
in the instant proceeding, seeking either to have this Court
reconsider them or to preserve them for possible appeal. However, in
June 2013, after the instant matter had been fully briefed and
argued, the Court of Appeals for the Second Circuit affirmed this
Court's decision in HSBC as well as Judge McMahon's similar decision
in Picard v. JPMorgan Chase & Co., 460 B.R. 84 (S.D.N.Y. 2011), and
held that the Trustee lacks standing to assert common law claims on
behalf of either Madoff Securities or its customers against alleged
aiders-and-abettors of Madoff Securities' fraud. See Picard v. JP
Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC.) ("JP
Morgan II"), 721 F.3d 54 (2d Cir. 2013).

The decision of the Court of Appeals, as applied to the instant matter, disposes of many of the Trustee's arguments here. As the Court of Appeals noted, the Trustee's authority to bring actions such as the instant cases turns on the prudential rule of standing that "[a] party must 'assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " JP Morgan II, 721 F.3d at 58 (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). Thus, the first question in determining whether the Trustee may assert his desired claims is whether the Trustee may bring these claims on behalf of Madoff Securities itself. It is clear that he may not.

The doctrine of in pari delicto is a well-established principle of New York law based on the notion that "one wrongdoer may not recover against another." Id. at 63 (citing Kirschner v. KPMG LLP, 938 N.E.2d 941, 950 (N.Y. 2010)). In the bankruptcy context, "[t]he debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative," id. at 63, and therefore the doctrine of in pari delicto "bars the Trustee (who stands in Madoff's shoes) from asserting claims directly against the Defendants on behalf of the estate for wrongdoing in which Madoff (to say the least) participated," id. at 58 (emphasis in original). See also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir. 1991) ("[A] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."). To the extent that the Trustee has

asserted in this proceeding various policy reasons why in pari
delicto should not apply on the facts of this case, those arguments
were rejected by the Second Circuit, and thus they are rejected here
as well. See JPMorgan II, 721 F.3d at 64-65.

Without the authority to bring claims on behalf of Madoff
Securities itself, the Trustee also argues that he is entitled to
bring claims on behalf of Madoff Securities' customers. However, the
"the implied prohibition in Article III against third-party standing
applies to actions brought by bankruptcy trustees." Id. at 67; see
also id. (citing Caplin v. Marine Midland Grace Trust Co. of N.Y.,
406 U.S. 416 (1972) for the proposition that "federal bankruptcy law
does not empower a trustee to collect money owed to creditors").
Seeking to escape Caplin's prohibition against bankruptcy trustees
asserting claims of the debtor's creditors, the Trustee argues that
SIPA, rather than the Bankruptcy Code, provides for such standing.
In doing so, the Trustee relies on three theories of standing:
bailment, subrogation, and assignment. As described below, the
Second Circuit (like this Court before it) rejected the Trustee's
bailment and subrogation theories, holding that Caplin applies
notwithstanding SIPA, and this Court adopts that conclusion.

In JPMorgan II, the Second Circuit rejected the Trustee's
theory that he had standing to bring suit as a bailee of Madoff
Securities' customer property, finding that SIPA "does not confer
upon SIPA trustees a power, denied all other bankruptcy trustees, to
sue third parties on claims that belong to persons other than the

estate," as the statute nowhere references bailment "or in any way indicate[s] that the trustee is acting as bailee of customer property." See id. at 71-72. The Second Circuit likewise rejected the Trustee's attempt to draw upon common law principles of bailment for a variety of reasons that need not be repeated here. See id. at 72-73. Nor was the Second Circuit convinced by the Trustee's attempt to read into SEC Rule 15c3-3 the creation of a bailment relationship between a broker-dealer and his customers. See id. at 73 ("Whatever Rule 15c may do, it does not confer power on a SIPA trustee to sue on behalf of customers."). Thus, to the extent that the Trustee argues that he has standing as a bailee of customer property, those arguments are of no avail.

The Second Circuit next considered and rejected the Trustee's argument that SIPC has standing to bring common law claims (and SIPC, in turn, assigned that right to the Trustee) under a theory of equitable subrogation because SIPC advanced funds to pay Madoff Securities' customers' net-equity claims, pursuant to SIPA's mandate. See 15 U.S.C. § 78fff-3(a). The Second Circuit found that, by its terms, SIPA merely provides for "a narrow right of subrogation — for SIPC to assert claims against the fund of customer property and thereby recoup any funds advanced to customers once the SIPA trustee has satisfied those customers' net equity claims" — and that, if such a broader right of subrogation existed, the court would have expected such a right "to be manifested in the statutory wording and in the record." 721 F.3d at 74-75. Accordingly, this

Court rejects the Trustee's argument that he has standing to bring the instant claims under a subrogation theory for the reasons stated in JPMorgan II.[1]

However, while the Second Circuit rejected the Trustee's bailment and equitable-subrogation theories of standing, that court was not asked to consider whether the Trustee has standing to bring common law actions as an assignee of customer claims because, as recognized by this Court's decision in HSBC, the Trustee at that time had "received no assignments of customer claims against third parties."[2] 454 B.R. at 36-37. In the instant proceedings, the Trustee alleges that he has now received assignments of customers' claims against third parties in two contexts: First, he asserts that he has received assignments from various Madoff Securities customers as part of the settlement of those customers' proofs of claim filed

---

[1] To the extent that the Trustee seeks to rely on the Second Circuit's decisions in Redington v. Touche Ross & Co., 592 F.2d 617 (2d Cir. 1978), rev'd, 442 U.S. 560 (1979), and St. Paul Fire & Marine Insurance Co. v. PepsiCo, Inc., 884 F.2d 688 (2d Cir. 1989), the Court refers to the Second Circuit's clear and cogent discussion of why the Trustee's reliance on those precedents is unavailing. See JPMorgan II, 721 F.3d at 66-71.

[2] While this Court briefly addressed the question of the Trustee's standing as an assignee of customers' claims in HSBC, that issue was not squarely before the Court, both because, as noted above, the Trustee at that time had not received assignments of customer claims and because the Trustee raised the argument "only in a footnote in his brief." 454 B.R. at 36. Thus, the Court is free to reconsider its prior views based on the full presentation of the issue it has received both on the papers and at oral argument in this consolidated proceeding, and it declines to rest its decision on the discretionary doctrine of law of the case. See In re PCH Associates, 949 F.2d 585, 592 (2d Cir. 1991) (noting that law of the case "is a discretionary rule of practice and generally does not limit a court's power to reconsider an issue").

with the estate, see, e.g., Decl. of Andrew D.W. Cattell dated Aug. 3, 2012 ("Cattell Decl."), Ex. J; and, second, he alleges that he obtained assignments as one form of consideration in the settlement agreements reached and approved by the Bankruptcy Court with respect to the Trustee's claims against various Madoff Securities feeder funds, see, e.g., Cattell Decl. Ex. K.

As a general matter of New York law, "an assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim." Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc., No. 08 Civ. 7508, 2012 WL 3584278, at *5 (S.D.N.Y. Aug. 17, 2012). Section 541(a)(7) of the Bankruptcy Code includes as property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Thus, the Second Circuit has held, in the context of a non-SIPA bankruptcy, that "a trustee may assert claims assigned to it by a bankrupt's creditors for the benefit of the estate, because those claims can become property of the estate under § 541(a)(7)." In re CBI Holding Co., Inc., 529 F.3d 432, 459 (2d Cir. 2008).

The question then becomes whether there exists a conflict between SIPA and the Bankruptcy Code with respect to the Trustee's authority to accept assignments of creditor claims. See 15 U.S.C. § 78fff(b) (stating that a SIPA liquidation proceeding "shall be conducted in accordance with, and as though it were being conducted under" the Bankruptcy Code, but only "[t]o the extent consistent with the provisions of this chapter"). Defendants argue that the

8

Trustee is prevented from receiving these assignments by § 78fff-2(b) of SIPA, which provides:

> Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases, and assignments, but shall be without prejudice to any right of a claimant to file formal proof of claim within the period specified in subsection (a)(3) of this section for any balance of securities or cash to which such claimant considers himself entitled.

15 U.S.C. § 78fff-2(b) (emphasis added). Based on this language, defendants argue that SIPA limits a trustee's power to obtain assignments to those obtained as a condition of payment of a customer's "net-equity" claim; that is, the Trustee may only receive by assignment that customer's net-equity claim, not the customer's claims against third parties. Thus, defendants contend that § 78fff-2(b) of SIPA conflicts with the broader assignment rights provided by § 541(a)(7) of the Bankruptcy Code, and therefore § 541(a)(7) must give way.

However, it is unlikely that Congress would couch a restriction on a SIPA trustee's authority to obtain assignments in the language of an affirmative grant of power. Section 78fff-2(b) deals with a type of payment to a certain class of creditors — net-equity claims paid to customers of a debtor-broker-dealer out of a separate customer property estate — that are not ordinarily part of a run-of-the-mill bankruptcy. Thus, viewing this provision as a grant of power, its language may be read to authorize the Trustee to set conditions on what otherwise would seem to be statutorily mandated

payments of net-equity claims to customers. At no point does this provision expressly state that the Trustee has any less power with respect to assignments than an ordinary bankruptcy trustee, implying that Congress did not intend such a reading.

It must be noted that other courts in this district have held that SIPA bars a trustee from obtaining assignments of claims against third parties. See, e.g., Mishkin v. Peat, Marwick, Mitchell & Co., 744 F. Supp. 531, 554-55 (S.D.N.Y. 1990); In re Park S. Sec., LLC., 326 B.R. 505, 515 (Bankr. S.D.N.Y. 2005). But these cases were decided before the Second Circuit's decision in CBI and thus rely on an assumption that a trustee has no authority to accept assignments absent express authorization in SIPA. However, because a SIPA trustee is "vested with the same powers . . . as a trustee in a case under title 11," 15 U.S.C. § 78fff-1(a), and because ordinary bankruptcy trustees, after CBI, have the authority to accept assignments of creditor claims against third parties, that assumption no longer holds true. Therefore, this Court is not persuaded by these contrary decisions.

Finally, this outcome also makes sense as a matter of the practical and policy concerns motivating the Second Circuit's rejection of the Trustee's subrogation theory in JPMorgan II. While the Trustee insisted that the defendants in those actions effectively would be immunized from suit if the Trustee were not authorized to bring customer claims, the JPMorgan II court noted that "it is not obvious why customers cannot bring their own suits

10

against the Defendants," and, in fact, "customers had already filed
such actions." 721 F.3d at 76. Here, by contrast, by assigning
claims to the Trustee, the customers relinquished their right to
bring suit; in this context, defendants — individuals and entities
who, if one accepts the Trustee's allegations (as the Court must on
a motion to dismiss), were complicit in Madoff Securities' fraud —
would indeed be immunized from suit, at least those suits to be
brought on behalf of the specific creditors who assigned their
claims. Moreover, that the assigning creditors have fully
relinquished their claims minimizes the specter of inconsistent
judgments and divided control over lawsuits if claims could be
pursued by the Trustee and customers simultaneously, see id. at 77,
as the Trustee would exercise sole control over the assigned claims.
Cf. CBI, 529 F.3d at 458 ("We can think of many arguments against
allowing a trustee to usurp the claims of a bankrupt's non-
cooperating creditors that do not counsel against permitting
creditors to voluntarily transfer their claims to a trustee as part
of a court-approved plan of reorganization or liquidation."). In
sum, where nothing in § 78fff-2(b) explicitly restricts the
Trustee's authority to obtain assignments under the Bankruptcy Code,
and where such an assignment raises none of the concerns addressed
in JPMorgan II, the Trustee has standing as an assignee of creditor
claims to assert those creditors' common law causes of action
against third-party defendants.[3]

---

[3] The defendants briefly raise a question with respect to the

Having found that the Trustee has standing to bring validly assigned common law claims, the Court must turn to the second issue in this consolidated proceeding: whether the Trustee's pursuit of those claims is precluded by SLUSA. SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging[] a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). The relevant question for this consolidated proceeding is whether the Trustee's aggregation of claims through assignment constitutes a "covered class action" under SLUSA. For the reasons that follow, the Court finds that it does.

SLUSA includes within the definition of a covered class action "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members." 15 U.S.C. § 78bb(f)(5)(B)(i). However, SLUSA also includes a "counting" provision, under which "a corporation, investment company, pension

_____

validity and enforceability of at least some of the assignments based on which the Trustee seeks to assert claims. As this question raises an issue of fact relevant only to some of the defendants who are party to this consolidated proceeding, it is an issue properly reserved for consideration upon return to the Bankruptcy Court. This Opinion and Order expresses no view as to these issues.

plan, partnership, or other entity, shall be treated as one person or prospective class member, but only if the entity is not established for the purpose of participating in the action." 15 U.S.C. § 78bb(f)(5)(D).

Defendants argue that SLUSA applies here because the Trustee's claims sound in fraud, relate to Madoff Securities' purported trading in covered securities, and are brought "on behalf of" the thousands of Madoff Securities customers from whom he claims to have received assignments.[4] The Trustee contends that SLUSA should not apply because he is entitled to the protections of SLUSA's counting provision, in that he is a single entity not created solely in order to bring these specific adversary proceedings, and thus his pursuit of the assigned claims should not be deemed a "covered class action."

Courts generally have held that bankruptcy trustees should be treated as a single entity under SLUSA in order to avoid undermining a trustee's ability under the Bankruptcy Code to pursue claims owned by the debtor. See LaSala v. Bordier et Cie, 519 F.3d 121, 136 (3d Cir. 2008) ("Giving effect to Congress's desire not to preempt claims that pass from a debtor corporation to its bankruptcy estate

---

[4] The Court declines to address whether the Trustee alleges in any given complaint "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). Such an inquiry must be made on a complaint-by-complaint basis, looking at, e.g., what conduct the Trustee alleges and each defendant's relationship to Madoff Securities' fraud. Accordingly, the Court declines to address this issue on a consolidated basis and addresses only whether the Trustee's pursuit of assigned customer claims constitutes a "covered class action."

is important because to do otherwise would work a significant change in the bankruptcy system that Congress created and, according to the legislative history cited above, intended to leave undisturbed."). Here, however, the Trustee is not attempting to pursue claims belonging to the debtor, a single entity, for the benefit of many; rather, he seeks to assert claims belonging to many creditors as a single entity. Thus, the Court must look through the Trustee's form to the source of the Trustee's claims in order to properly apply SLUSA on the facts of this case.

In LaSala v. Bordier et Cie, 519 F.3d 121, the Court of Appeals for the Third Circuit held that a claim assigned to a litigation trust for the benefit of the debtor's unsecured creditors was not precluded by SLUSA because the assignor of the claim was a single entity (the debtor). In so holding, the court looked to the language of 15 U.S.C. § 78bb(f)(5)(B)(i) and noted that the definition of "covered class action" is "two-pronged: to be a covered class action, (1) the claim must be brought 'on behalf of 50 or more persons,' and (2) questions of law or fact common to 'those persons' must predominate." Bordier et Cie, 519 F.3d at 133 (emphasis in original). The court continued:

> Prong two of § 78bb(f)(5)(B)(i), then, seems to use the terms "persons" and "members of the prospective class" to refer to the original owners of the claim — those injured by the complained-of conduct, as those are the persons who might have common questions of law or fact related to the claim that predominate over individual questions of law or fact. Reading prong one in light of prong two, the phrase "on behalf of 50 or more persons" seems to refer to someone bringing a claim on behalf of 50 or more

injured persons. In other words, the phrase refers to the
assignors of a claim, not to the assignee (or, if the
assignee is a trust, to its beneficiaries).

Id. at 134 (emphasis in original).

Although Bordier et Cie addressed a litigation trust separate
from the bankruptcy trustee, the principles enunciated in that
decision apply on the facts of this case as well. Here, the Trustee
stands in the shoes of the assignors, not the bankruptcy estate,
because, as discussed above, the Trustee could not bring these suits
as the debtor's representative under the doctrine of in pari
delicto. Questions of reliance, damages, and the like would be
addressed to the thousands of customers and other creditors who
assigned their claims to the Trustee, just as they would in a
shareholder class action. Furthermore, as evidenced by the
enumerated list in SLUSA's counting provision — which must inform
the Court's understanding of the term "entity" that follows — the
counting provision is intended to preserve the rights of preexisting
entities, such as corporations and pension plans, to assert claims
on their own behalf. See Bordier et Cie, 519 F.3d at 132-33 ("[T]he
court is to follow the usual rule of not looking through an entity
to its constituents unless the entity was established for the
purpose of bringing the action, i.e., to circumvent SLUSA.").
Broadening the definition of "entity" to encompass circumstances in
which a representative asserts claims belonging to completely
distinct entities and individuals stretches the term beyond
Congress's intent.

Moreover, for purposes of the action here, the Trustee is in effect an entity "established for the purpose of participating in the action." Under Caplin, as discussed above, the duties of a bankruptcy trustee generally do not extend to bringing claims owned by creditors of the estate. See 406 U.S. at 428. Thus, in the context of pursuing these claims, the Trustee is acting in his role as assignee, and that role solely entails the litigation of these claims. Cf. Cape Ann Investors LLC v. Lepone, 296 F. Supp. 2d 4, 10 (D. Mass. 2003) (finding that the role of trustee of a litigation trust created as part of a bankruptcy proceeding "is no different than that of any shareholder class representative"). Where investors in Madoff Securities have sought to bring similar state-law class actions against similar defendants on their own, their claims have often been found to be precluded by SLUSA. See, e.g., Trezziova v. Kohn, 730 F.3d 112 (2d Cir. 2013) (holding that SLUSA applies to preclude a class action brought by investors in Madoff feeder funds asserting state-law claims against Madoff Securities' bankers). Allowing the Trustee to aggregate and assert such claims in such a way as to avoid SLUSA's prohibition against the original claimholders asserting the same claims is merely permitting the Trustee to make an end-run around SLUSA's limitations.[5] See Bordier et Cie, 519 F.3d at 136 ("[SLUSA's] statutory text and legislative

---

[5] This does not mean, of course, that the Trustee may assert no claims against the defendants to the proceedings here. SLUSA has no bearing on federal securities law claims, nor does SLUSA preclude common law claims brought on behalf of fifty or fewer persons.

history signal that the definition was designed to prevent
securities-claims owners from bringing what are, in effect, class
actions by assigning claims to a single entity."); RGH Liquidating
Trust v. Deloitte & Touche LLP, 955 N.E.2d 329, 342 (N.Y. 2011)
(Smith, J., dissenting) ("Nothing in either the language or the
legislative history of SLUSA suggests that Congress meant to grant
an exemption to any 'liquidation vehicle' that is doing precisely
what SLUSA was enacted to prevent."). In light of the admonition
that SLUSA must be given a "broad construction," Merrill Lynch,
Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006), the
Court finds that the Trustee is not entitled to the protections of
SLUSA's counting provision, and thus his simultaneous pursuit of
more than fifty customers' claims assigned to him is subject to
SLUSA preclusion (assuming, of course, that his actions otherwise
would be barred by SLUSA, see supra note 4).

Finally, the Court turns to the question of whether the
"insider exception" to the doctrine of in pari delicto allows the
Trustee to bring unjust enrichment claims against Stephanie Mack,
the widow of Mark Madoff, and Deborah Madoff, the wife of Andrew
Madoff. Although the in pari delicto doctrine generally bars the
Trustee from bringing suit against Madoff Securities' co-wrongdoers,
an exception to this rule exists for claims by the Trustee against
corporate insiders for breaches of their fiduciary duties. See
Global Crossing Estate Representative v. Winnick, No. 04 Civ. 2558,
2006 WL 2212776, at *15 (S.D.N.Y. Aug. 3, 2006); In re Granite

17

Partners, L.P., 194 B.R. 318, 332 (Bankr. S.D.N.Y. 1996) ("In pari delicto bars claims against third parties, but does not apply to corporate insiders or partners. Otherwise, a trustee could never sue the debtor's insiders on account of their own wrongdoing.").

The allegations relevant to this motion to dismiss are as follows: Mark Madoff, now deceased, and Andrew Madoff are Bernard Madoff's sons and former Co-Directors of Trading at Madoff Securities. Second Am. Compl. ("SAC") ¶¶ 8, 11, Picard v. Peter B. Madoff, Adv. Pro. No. 09-01503, ECF No. 113 (Bankr. S.D.N.Y. filed May 4, 2012). Stephanie Mack was married to Mark Madoff from October 2004 until his death in December 2010, id. ¶ 10, and Deborah and Andrew Madoff were married in January 1992, id. ¶ 12. The Trustee alleges that Mark and Andrew, because of their involvement in Madoff Securities, improperly "received, directly or indirectly, substantial transfers of Customer Property from [Madoff Securities] which properly belonged to the company and, ultimately, its customers." Id. ¶ 67. With respect to Stephanie and Deborah, the Trustee brings common law claims of unjust enrichment, id. ¶¶ 213-18, alleging that they received or benefited from "at least $54,548,463 in transfers, and interests in property of undetermined value, . . . during the Statutory Period and resulting from their marriages to Mark and Andrew Madoff." Id. ¶ 128. The Trustee further alleges that many of these transfers were jointly made directly from Madoff Securities' primary account to Stephanie and Mark or Deborah and Andrew during the course of their marriages. See id. Exs. H, K.

18

For the purposes of this motion, it is uncontested that Andrew and Mark were corporate insiders of Madoff Securities but that Deborah and Stephanie were not themselves insiders or even Madoff Securities employees, nor is there any allegation that either Deborah or Stephanie personally had knowledge of Madoff Securities' wrongdoing. Rather, the Trustee argues that the insider exception should be extended as a matter of equity to cover Deborah and Stephanie in order to prevent corporate insiders from circumventing liability for breaches of their fiduciary duties by asserting a shared property interest with their spouses. Effectively, the Trustee seeks to extend the definition of insiders to include spouses solely by virtue of their marriage to, and their receiving of joint transfers with, corporate insiders. This novel proposition is unsupported by any legal authority and extends the limited insider exception beyond its proper bounds.

As a general rule, the New York Court of Appeals has stated that "the principle that a wrongdoer should not profit from his own misconduct is so strong in New York that we have said the defense applies even in difficult cases and should not be 'weakened by exceptions.' " Kirschner, 938 N.E.2d at 950 (quoting McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 470 (1960)). Applying this logic, the Second Circuit has read the insider exception to the in pari delicto doctrine narrowly to allow only for suits by a bankruptcy trustee against a fiduciary of the debtor corporation, not against third parties who are alleged to have aided and abetted

19

the debtor's fraud, short of control by the third party over the
debtor. See In re Mediators, Inc., 105 F.3d 822, 826 (2d Cir. 1997)
(denying standing to creditors' committee as representative of the
debtor under in pari delicto where a law firm had assisted the
debtor's sole shareholder in stripping the debtor corporation of
assets); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1094–95 (2d
Cir. 1995) (rejecting the claim that an accounting firm exercised
"total domination and control" over the debtor and finding that the
insider exception did not apply). The parties acknowledge that no
exception to in pari delicto has thus far been carved out in these
circumstances by any court, and this Court declines to create a new
exception and thereby circumvent Kirschner's instruction. As a
matter of logic, it would make little sense that those who engaged
in culpable conduct would receive more favorable treatment under the
insider exception than a spouse who is not alleged to have had any
role in the fraud. Cf. Kirschner, 938 N.E.2d at 950 ("The justice of
the in pari delicto rule is most obvious where a willful wrongdoer
is suing someone who is alleged to be merely negligent.").

   The Trustee interposes many arguments against the application
of in pari delicto in this context.[6] First, the Trustee argues that

_____

[6] In his brief, the Trustee implies that the Court's consideration of
this issue is improper because the issue has already been determined
by the Bankruptcy Court. The Court disagrees. Judge Lifland granted
the Trustee's motion to amend his complaint to add these common law
claims against Stephanie and Deborah and found that the issue of
whether in pari delicto applies "to be one of first impression,
[such that] it is not clear from the face of the pleadings that the
amendment would be futile." Picard v. Madoff, 468 B.R. 620, 633

the Court should focus on the transfers themselves — which were made to both an insider (Mark or Andrew) and an outsider (Stephanie or Deborah) — and suggests that the spouses should not be permitted to assert equitable defenses that are unavailable to their co-transferees. However, this approach misses the point of the equitable doctrine of in pari delicto, which seeks to determine the relationship between the parties to a given suit in deciding whether to adjudicate a dispute between wrongdoers. See Kirschner, 938 N.E.2d at 950 ("[N]o court should be required to serve as paymaster of the wages of crime, or referee between thieves." (quoting Stone v. Freeman, 298 N.Y. 268, 271 (1948))). The purpose of the insider exception is to hold fiduciaries responsible for their conduct as control persons; whether Deborah or Stephanie received the transfers in conjunction with their husbands is irrelevant to the question of whether they exercised control over the company. Indeed, it is uncontested that the spouses themselves were in no way involved in Madoff Securities' fraud.[7]

---

(Bankr. S.D.N.Y. 2012). Here, however, the defendants have now moved to dismiss the Trustee's complaint against them, see Notice of Motion to Dismiss, No. 12 Misc. 115, ECF No. 270 (S.D.N.Y. filed Aug. 3, 2012), and so the Court is considering a separate motion to be judged on a different standard than that previously applied by the Bankruptcy Court.

[7] The Trustee also argues that it is improper for the Court to decide whether the insider exception applies on a motion to dismiss and should instead await discovery in this action. However, there is no factual dispute as to Stephanie and Deborah's lack of involvement at Madoff Securities. See SAC ¶¶ 8, 10 (conclusorily alleging that Stephanie and Deborah were insiders while making no allegations that they had any role at Madoff Securities). Thus, this issue may

The Trustee also seeks to analogize the circumstances here to SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998), in which the Second Circuit upheld the grant of a preliminary injunction for possible disgorgement by the Securities and Exchange Commission ("SEC"), which froze assets placed by a husband in his wife's bank account. In Cavanagh, the Second Circuit stated that allowing the wife "to now claim valid ownership of those proceeds would allow almost any defendant to circumvent the SEC's power to recapture fraud proceeds, by the simple procedure of giving stock to friends and relatives." Id. at 137. However, the statutory right of the SEC, as a regulatory entity, to seek disgorgement of ill-gotten gains is a different matter entirely from the Trustee's assertion of standing to bring common law claims in order to claim additional funds on behalf of a bankruptcy estate. Thus, Cavanagh has no bearing on this case.

Finally, it bears mention that the Trustee has other avenues through which he might seek to recover these funds, and thus the Court does not feel compelled as a matter of equity to create a new exception to the in pari delicto doctrine in these circumstances. For example, the Trustee may assert claims for breach of fiduciary duty and unjust enrichment against the insiders themselves, as he has done here, see SAC ¶¶ 206-18, and he may bring fraudulent-conveyance and preferential-transfer claims against both the insiders and their spouses. The fact that strategic errors on the

---

properly be determined on the pleadings as a matter of law. Cf. Mediators, 105 F.3d at 824 (deciding this issue on a motion to dismiss).

part of the Trustee may prevent him from bringing such recovery proceedings against Deborah and Stephanie here, see Picard v. Madoff, 468 B.R. 620 (Bankr. S.D.N.Y. 2012), does not provide a sufficient reason to expand the limited insider exception to cover new categories of non-culpable individuals. Accordingly, in pari delicto applies, and the Trustee's common law claims against Stephanie Mack and Deborah Madoff are dismissed for lack of standing.

In sum, the Court finds that the Trustee has standing to bring claims on behalf of Madoff Securities' customers to the extent, but only to the extent, that the customers validly assigned their claims to the Trustee. However, the Court also finds that the Trustee's pursuit of these assigned claims, to the extent that he brings the claims of more than fifty assignors, constitutes a covered class action for purposes of SLUSA. Whether SLUSA applies to bar these claims because the Trustee alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(A), in a given action is a matter to be determined by the Bankruptcy Court upon remand. Finally, the Trustee's common law claims against Stephanie Mack and Deborah Madoff are dismissed for lack of standing under the doctrine of in pari delicto. Except to the extent provided in other orders, the Court directs that the adversary proceedings listed in Exhibit A of item number 114 on the docket of 12 Misc. 115 be returned to the

Bankruptcy Court for further proceedings consistent with this
Opinion and Order.

SO ORDERED.

Dated: New York, NY
December 5, 2013                    JED S. RAKOFF, U.S.D.J.